UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KENNETH A. TETREAULT,          )
    Plaintiff,                 )
                               )
            v.                 )    C.A. No. 11-30029-MLW
                               )
MICHAEL J. ASTRUE,             )
COMMISSIONER OF SOCIAL         )
SECURITY ADMINISTRATION,       )
    Defendant.                 )

MEMORANDUM AND ORDER

WOLF, D.J.                                      March 28, 2012

I.   INTRODUCTION

        Plaintiff Kenneth Andrew Tetreault filed a Motion for Judgment

on the Pleadings regarding the final decision of defendant Michael

J. Astrue, the Commissioner of the Social Security Administration,

denying his application for Social Security Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI").

Defendant has filed a motion to affirm the decision. For the

reasons described below, plaintiff's motion for judgment on the

pleadings is being denied, and defendant's motion to affirm the

decision is being allowed.

II.  FACTS AND PROCEDURAL HISTORY

        Plaintiff filed an application for DIB on July 1, 2008, and

SSI on July 16, 2008. See Administrative Record ("AR") at 42. In

his application, plaintiff alleged a disability beginning on

September 30, 2005, and arising from chronic lower back pain, high

blood pressure, and cholesterol. Id. at 42, 121. Plaintiff's

application was denied on September 10, 2008, and, after reconsideration, again on January 8, 2009. Id. at 42, 64-69.

An administrative hearing was held before Administrative Law Judge ("ALJ") Peter Martinelli on May 20, 2010. Id. at 4-34. On August 20, 2010, the ALJ denied plaintiff's application, finding that he did not meet the requirements of the five-step sequential evaluation process for determining whether an individual is disabled and, therefore, was not disabled. Id. at 42-51. The sequential evaluation was performed pursuant to 20 C.F.R §§404.1520 and 416.920. Id. at 43. Steps one through five address whether: (1) the claimant is engaging in substantial gainful activity; (2) the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe; (3) the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. §404 Subpart P, Appendix 1; (4) the claimant's residual functional capacity allows him to perform the requirements of his past relevant work; and (5) the claimant is able to perform any other work. Id.

The ALJ found that plaintiff satisfied steps one and two because he was not engaged in substantial gainful activity after September 30, 2005, the alleged onset date, and he suffered from the following severe impairments: ongoing low back pain, status

post hemilaminectomy[1], moderate obesity, and a recent finding of obstructive sleep apnea. Id. at 44. At step three, the ALJ determined that these impairments did not meet or medically equal the criteria of an impairment listed in 20 CFR §404 Subpart P, Appendix 1. Id. at 45. According to the five step process under 20 C.F.R §§404.1520 and 416.920, if the claimant's impairment or combination of impairments meets or medically equals the criteria, the claimant is disabled. Id. at 43. If it does not, the analysis proceeds to the next step. Id. In order to complete step four, the ALJ must determine the plaintiff's residual functional capacity. Id. at 43-44. The ALJ found that plaintiff has the residual functional capacity to perform sedentary work "including lifting ten pounds, standing and walking two hours and sitting six hours during an eight-hour workday, but would require a position which allowed a sit to stand option and would require work activity which did not impose concentrated exposure to dust, fumes, strong odors, temperature or humidity extremes." Id. at 45. At step four, the ALJ found that plaintiff's impairments and residual functional capacity precluded a return to his past relevant work, silk screening wallpaper. Id. at 49.

Continuing to step five, the ALJ found that, considering

---

[1] The ALJ noted that while the term "Failed Back Syndrome" has been used, careful review of the treating history reveals this to be completely based on subjective symptoms, and there were no objective findings of recurrent herniations. See AR at 44, n.1.

plaintiff's age, education, work experience, and residual functional capacity, he was capable of performing other jobs that exist in significant numbers in the national economy. Id. At the hearing, the ALJ asked an impartial vocational expert, James T. Parker, whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity. Id. at 42, 49-50. Parker testified that, consistent with the Dictionary of Occupational Titles (Social Security Ruling 00-4p), given all of these factors, plaintiff would be able to perform the requirements of representative occupations such as a mall information clerk, a production sorter, and a production inspector. Id. at 50. Based on Parker's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id.

Accordingly, the ALJ found that "the claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2005, through the date of this decision." Id.

The ALJ did not give credit to plaintiff's subjective complaints of pain because he found that plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. at 46. In making the determination that plaintiff was not credible, the

4

ALJ considered plaintiff's attempts to manipulate treatment visits to suit his application, plaintiff's admission to having lied in order to get methadone treatment, and plaintiff's jail time for dealing drugs. See id. at 46-48. The ALJ also found that plaintiff's subjective allegations were "inconsistent with his treatment history." Id. at 46.

The Decision Review Board did not complete its review within 90 days. Thus, the ALJ's decision became final on December 8, 2010. See id. at 1-3.

Plaintiff timely filed in this court a Motion for Judgment on the Pleadings, contending, essentially, that the ALJ's decision was based on the following errors: (1) failure to accord proper weight to the opinion of plaintiff's treating physician; and (2) failure to consider substantial evidence regarding plaintiff's residual functional capacity. Defendant then filed a motion to affirm the ALJ's decision.

III. ANALYSIS

"Judicial review of Social Security administrative decisions is authorized by 42 U.S.C. §405(g)." Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); see also 42 U.S.C. §1383(c)(3) (providing that judicial review of SSI decisions is governed by the standards applicable to judicial review of Disability Insurance Benefits decisions pursuant to 42 U.S.C. §405(g)). The court's review is "limited to determining whether the ALJ deployed the proper legal

standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Manso-Pizarro v. Sec'y of Health & Humam Servs., 76 F.3d 15, 16 (1st Cir. 1996)).

A reviewing court must affirm the ALJ's decision if it is supported by "substantial evidence" in the record. 42 U.S.C. §405(g); see also Rodriquez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The ALJ is entitled to weigh the evidence and to resolve conflicts in the medical evidence and testimony. See Rodriquez Pagan, 819 F.2d at 3. The ALJ may also consider questions of demeanor and credibility, and his or her conclusions regarding demeanor and credibility are entitled to deference by a reviewing court. See Crespo v. Sec'y of Health & Human Servs., 831 F.2d 1, 7 (1st Cir. 1987).

A.    Opinion of Plaintiff's Treating Physician

Plaintiff's first contention is that the ALJ failed to accord proper weight to the opinion of plaintiff's treating physician regarding plaintiff's residual functional capacity. The ALJ noted that Dr. Stephen Alsdorf, plaintiff's treating physician, found that plaintiff was disabled from all substantial gainful activity.

See AR at 48; 443-448. However, the ALJ determined that plaintiff's residual functional capacity permitted the performance of sedentary work as defined in 20 CFR §§404.1567(a) and 416.967(a), "including lifting ten pounds, standing and walking two hours and sitting six hours during an eight-hour work day, but would require a position which allowed a sit to stand option and would require work activity which did not impose concentrated exposure to dust, fumes, strong odors, temperature or humidity extremes." Id. at 45.

"[T]reating physicians' opinions are ordinarily accorded deference in Social Security disability proceedings." Richards v. Hewlett-Packard Corp., 592 F.3d 232, 240 n.9 (1st Cir. 2010). This is because treating physicians are best situated to offer "a detailed, longitudinal picture . . . and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §416.927(d)(2). However, for a treating physician's opinion to be given controlling weight, it must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and must be consistent with other substantial evidence in the record. See 20 C.F.R. §416.927(d)(2); Silva-Valentin v. Comm'r of Soc. Sec., 74 F. App'x 73, 74 (1st Cir. 2003) (unpublished); Haidas v. Astrue, C.A. No. 08-11274-MLW, 2010 WL 1408618, at *2 (D. Mass. Mar. 31, 2010). In making this

determination, an ALJ may consider any other medical opinion, "[r]egardless of its source." 20 C.F.R. §416.927(d).

In this case, the ALJ declined to give controlling weight to the opinion of plaintiff's treating physician, Dr. Alsdorf. Essentially, the ALJ found that Dr. Alsdorf's opinion was inconsistent with other evidence in the record and, therefore, did not merit controlling weight. <u>See</u> AR at 47-48. As the evidence in this case points in many different directions, this was not error.

### 1. Dr. Stephen Alsdorf's Opinion

On July 20, 2007, plaintiff was seen by Dr. Alsdorf of Family Practice Associates. AR at 216. Dr. Alsdorf observed that plaintiff had a "history of back pain with surgery," and plaintiff requested pain medication and a referral to a pain clinic for facet injections. <u>Id.</u> On August 20, 2007, plaintiff came back to see Dr. Alsdorf with the "primary concern" of needing "a disability form filled out for his back." <u>Id.</u> at 213. Dr. Alsdorf filled out the form, but noted that there were "no objective findings and [plaintiff] is neurologically intact." <u>Id.</u> Dr. Alsdorf noted that plaintiff was still eager to get facet injections, and observed that "[h]e does think that once he has these he will probably be able to work." <u>Id.</u> On November 6, 2008, plaintiff was again seen by Dr. Alsdorf at Family Practice Associates for complaints of groin tenderness, erectile dysfunction, and an increasing urge to start smoking again. <u>Id.</u> at 47, 296.

8

In April 2009, after reporting sleep difficulties, under Dr. Alsdorf's recommendation plaintiff underwent a sleep test in which he showed significant sleep apnea. See id. at 295, 315. Plaintiff was to be fitted with a CPAP mask for treatment of the condition. Id. at 315.

In May 2009, Dr. Alsdorf noted that plaintiff had developed some leg swelling, his weight had increased, and his blood pressure was not optimally controlled. Id. at 294. Dr. Alsdorf also noted that epidural injections were helpful. Id. Dr. Alsdorf's notes describe plaintiff as in "no acute distress." Id.

In October 2009, Dr. Alsdorf saw plaintiff again, and plaintiff reported ongoing lower back pain relief with pain rated at 4/10 post-injection. Id. at 329. Plaintiff presented as alert and oriented and in no acute distress, with normal flexion and intact gait. Id. Plaintiff also reported that he received significant and sustained relief from his periodic epidural steroid injections for approximately 2-3 months after each injection. See id.

On March 1, 2010, Dr. Alsdorf saw plaintiff again, and plaintiff reported that, though he had no "acute complaints," he continued to be "very inactive because of his pain." Id. at 453. Dr. Alsdorf noted that plaintiff said he could do "some form of work if it was sedentary." Id. At or immediately after that appointment, Dr. Alsdorf completed a physical residual functional

capacity form indicating that the plaintiff's pain would frequently interfere with his ability to pay attention and concentrate. <u>Id.</u> at 445. He stated that plaintiff was capable of low stress jobs, but not physical work. <u>Id.</u> Dr. Alsdorf determined that plaintiff could walk two blocks without developing serious pain, and could sit for "more than 2 hours" before needing to get up and stand for 15 minutes at a stretch. <u>Id.</u> He believed plaintiff would need at least eight unscheduled 15 minute breaks during the course of a work day and would be absent from work more than four days a month. <u>Id.</u> at 446, 447. He also believed plaintiff was unable to lift or carry objects weighing 10 pounds, could rarely lift and carry lighter objects, and could rarely twist or bend, but had no restriction in his ability to use his hands. <u>Id.</u> at 446, 447. The ALJ characterized Dr. Alsdorf's report as a "finding" that plaintiff was "disabled from all substantial gainful activity." <u>Id.</u> at 48.

2. <u>Other Evidence</u>

The other medical evidence in the record points in many different directions. The evidence - some of which is inconsistent with Dr. Alsdorf's opinion - is described in the ALJ's decision and is summarized as follows.

(a) <u>Dr. Eugene Heyman</u>

In June 2007, Dr. Eugene Heyman, from Family Practice Associates, treated plaintiff for "modest pain" due to neck and back problems resulting from a spinal fusion in 1998. AR at 310.

Dr. Heyman noted that plaintiff was "considerably overweight." <u>Id.</u> Upon examination, plaintiff displayed a normal range of motion for his age. <u>Id.</u> In July 2007, Dr. Heyman referred plaintiff to a Springfield pain clinic for facet injections. <u>Id.</u> at 307.

In February 2008, Dr. Heyman emphasized the need for plaintiff's weight reduction and smoking cessation. <u>Id.</u> at 299. Dr. Heyman also discussed physical therapy with plaintiff. <u>Id.</u> He noted that plaintiff's wife was "very vocal about how no one in the office is taking his back pain seriously" and observed that "it appears [plaintiff] has been applying for security disability and was denied." <u>Id.</u> Dr. Heyman did not give an opinion as to plaintiff's disability. <u>Id.</u>

(b)  <u>Dr. Jonathan Grenoble</u>

In August 2007, plaintiff saw Dr. Jonathan Grenoble of Family Practice with "multiple complaints." AR at 304. Plaintiff's "primary concern" during this visit was to have the Dr. Grenoble complete a disability form. <u>Id.</u> Plaintiff reported that he could "do most things," but developed increased pain doing certain activities, including bending down to lift things. <u>Id.</u> Plaintiff displayed no objective findings and was neurologically intact. <u>Id.</u> On examination, plaintiff's blood pressure was elevated and he had a somewhat stiff gait, but was able to get up and down from the examination table. <u>Id.</u> Dr. Grenoble recommended decreased salt intake and increased fluids. <u>Id.</u> Although records indicate that Dr.

11

Grenoble completed a disability form, it was not included in the medical records provided by Family Practice Associates. Id.

### (c)  Other Medical Evidence

Plaintiff uses methadone for pain management. AR at 15. In October 2007, plaintiff was accepted into a methadone maintenance program at Providence Behavioral Health Hospital, which included methadone doses and therapy.  Id. at 343-392. Plaintiff continued therapy sessions into March 2009, and had his methadone doses increased with the goal of becoming stabilized on methadone. Id.

Plaintiff also began treatment at Baystate Medical Center for back pain. Id. at 259. An examination there showed that plaintiff had a normal gait, could heel and toe walk without difficulty, had full range of motion in his spine, showed no tenderness, and had negative results on various tests. Id. at 260. Dr. Muhammad Isa, who examined plaintiff, indicated that plaintiff might be suffering from "failed back syndrome" and offered lumbar epidural treatment. Id. at 261.

In February 2008, Dr. Thenu Manikantan at Baystate Medical Center reported that plaintiff had received two epidural steroid injections, and was unsure whether the injections or methadone treatment were helping his condition. Id. at 255. Dr. Manikantan recommended physical therapy and advised plaintiff to return for further injection treatments should his pain return. Id.

Dr. Manikantan noted, on May 6, 2009, that the most recent

epidural injection, which was at a different location on the lumbar spine than usual, had not provided any benefit. Id. at 299. Despite his current pain level, Dr. Manikantan noted that plaintiff was able to engage in the activities of daily living. Id. The examination showed minimal paralumbar tenderness and was otherwise normal. Id.

In July 2009, Dr. Peter Viera at Baystate Medical Center examined plaintiff, and plaintiff reported "excellent pain relief" and an increase in ability to engage in activity five weeks after his most recent epidural steroid injection. Id. at 331. Plaintiff told Dr. Viera that the injections typically provided two to three months of significant pain relief, with better than 50 percent improvement over his baseline. Id.

In March 2010, Dr. Manikantan reported that there was "clear evidence" that plaintiff had benefitted from the injections and was able to ambulate and function better. Id. at 457. Plaintiff reported that he was swimming and riding a bicycle[2], but had problems walking distances. Id. Dr. Manikantan discharged plaintiff from the Pain Center in "good condition." Id.

(d) Medical Assessments

Dr. Leslie Caraceni, an advising physician to the Disability Determination Service, reviewed plaintiff's medical records through

---

[2] The ALJ noted at the May 20, 2010 hearing that there was evidence that plaintiff has been out swimming and bike riding, but plaintiff claimed he has not swam in a year. See AR at 25.

September 6, 2008, and concluded that he could do light work but needed to avoid concentrated exposure to hazardous working conditions. AR at 48, 226, 229. Dr. Caraceni assessed plaintiff as capable of light work with no more than occasional climbing, balancing, stopping, kneeling, crouching and crawling. Id. at 48, 226, 227. Plaintiff was also found to have occasional postural limitations, could occasionally lift 20 pounds and frequently lift 10 pounds, and could sit, stand and/or pull. Id. at 226-227.

Dr. Meghana Karande, who reviewed plaintiff's record through December 26, 2008, reached similar conclusions, but did not restrict exposure to hazardous work conditions. Id.

3.    Analysis

The medical evidence in the record generally presents plaintiff as suffering from chronic back pain with periods of intense pain and periods of comparative relief, with increased relief resulting from epidural injections. Plaintiff's MRI of the lumbar spine in August 2007 failed to reveal any evidence of recurrent disc herniation or nerve root compression. AR at 190. The results of plaintiff's physical examinations also consistently reveal a normal range of motion. In addition, the results of plaintiff's assessments vary significantly. In 2008, medical consultants Dr. Caraceni and Dr. Karande assessed plaintiff as capable of doing light work and able to frequently lift 10 pounds. AR at 47-48. In 2010, Dr. Alsdorf assessed plaintiff as capable of

doing some form of work if it were sedentary, noting that plaintiff admitted as much, and capable of lifting less than 10 pounds only on rare occasions. Id. at 47. After Dr. Alsdorf's assessment, when seen on March 10, 2010, through Baystate Pain Management, plaintiff noted that he was able to ambulate and function better and was swimming and bike riding, and Dr. Manikantan observed "clear evidence" that plaintiff had benefitted from the epidural injections. See AR at 457. The ALJ found that there was an "obvious discrepancy with the solicited residual functional capacity yielding a less than sedentary outcome vs. the claimant's admission to being able to perform sedentary work along with a benign objective examination." Id. at 47.

In essence, the record contains some evidence that is consistent with Dr. Alsdorf's conclusion and some evidence that contradicts it. Accordingly, it was not error for the ALJ to decline to give controlling weight to Dr. Alsdorf's opinion. See Ramos v. Barnhart, 119 F. App'x 295, 296 (1st Cir. 2005) (unpublished); Cotley v. Astrue, C.A. No. 10-30085-KPN, 2011 WL 2149265, at *4 (D. Mass. May 31, 2011). An "ALJ may downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where . . . it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians." Shields v. Astrue, C.A. No. 10-10234-JGD, 2011 WL

1233105, at *7 (D. Mass. Mar. 30, 2011) (internal quotation marks omitted).

When, as here, a treating physician's opinion is not controlling, an ALJ must look to the following factors to determine the weight properly given to the opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence in support of the medical opinion; (4) the consistency of the medical opinions reflected in the record as a whole; and (5) whether the physician is a specialist in the area in which he or she renders his or her opinions. See 20 C.F.R. §416.927(d). However, the First Circuit has indicated that it is not necessary for an ALJ to expressly address each of these factors. See Morales v. Comm'r of Soc. Sec., 2 F. App'x 34, 36 (1st Cir. 2001) (unpublished); Ramos, 119 F. App'x at 296; see also Haidas, 2010 WL 1408618, at *3; Dietz v. Astrue, C.A. No. 08-30123-KPN, 2009 WL 1532348, at *7 (D. Mass. May 29, 2009). Moreover, "[t]he law in [the First Circuit] does not require ALJs to give greater weight to the opinions of treating physicians" than to the opinions of non-treating physicians. Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991); Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982). An ALJ is entitled to choose between conflicting evidence. See Vazquez-Rosario v. Barnhart, 149 F. App'x 8, 10 (1st Cir. 2005) (unpublished);

Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987); Burgos Lopez v. Sec'y of Health & Human Servs., 747 F.2d 37, 41 (1st Cir. 1984).

In this case, the ALJ gave Dr. Alsdorf's opinion less weight because his assessment, including a finding of "disabled from all substantial gainful activity," was inconsistent with the plaintiff's longitudinal history and appeared to be based upon plaintiff's subjective allegations rather than objective findings. AR at 48. The ALJ noted, in regard to plaintiff's March 1, 2010, examination with Dr. Alsdorf, that "there is obvious discrepancy with the solicited residual functional capacity yielding a less than sedentary outcome vs. [plaintiff's] . . . admission to being able to perform sedentary work along with a benign objective examination." Id. at 47. The ALJ also stated that:

> The treating source medical opinion is so grossly inapposite to the above longitudinal history as to be unworthy of more than minimal probative value. This appears an obvious case of the treating source simply putting the claimant's subjective complaints on the form, as the objective examination on the same date as the form is filled out is inapposite to the listed limitations, as is the longitudinal history described above.

Id. at 48-49. The ALJ also found that the assessment appeared to be an "accommodation designed to increase the probability of disability" and appeared to be "solicited to accommodate plaintiff's application." Id. at 48.

As explained earlier, an ALJ is entitled to resolve conflicts in the record, see Rodriguez Pagan, 819 F.2d at 3, and "may reject

the opinion of the treating physician so long as an explanation is provided and the contrary finding is supported by substantial evidence," Shields, 2011 WL 1233105, at *7. In this case, the ALJ provided the required explanation, stating that Dr. Alsdorf's opinion was "inconsistent with the longitudinal history noted above" and appeared to be based upon "the claimant's subjective allegations rather than objective findings." AR at 48. In addition, the ALJ's finding regarding plaintiff's residual functional capacity was supported by substantial evidence, as discussed below. Accordingly, there was no error in giving little weight to Dr. Alsdorf's opinion in determining plaintiff's residual functional capacity.

B.    ALJ's Conclusion is Supported by Substantial Evidence

Plaintiff also contends that the ALJ erred by not considering the substantial evidence in the record, specifically the medical evidence of the treating source, in his conclusion as to the residual functional capacity of plaintiff. As previously stated, "substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co., 305 U.S. at 229). The ALJ is required to consider evidence including medical tests, claimant's statements, opinions of treating physicians, reports of claimant's activities, and claimant's course of treatment. See 20 C.F.R.

18

§404.1529c.

Here, the ALJ relied on reports from treating and examining sources, as well as plaintiff's ability to perform a wide range of daily activities, including kayaking, riding his bike and performing activities of daily living independently, despite his alleged impairments. <u>See</u> AR at 47-48.

Specifically, the ALJ noted that, although the plaintiff presented subjective complaints of pain, this was inconsistent with his treatment history, which indicated some pain but significant improvement with epidural injections and contained few objective findings supporting his complaints of back pain. <u>Id.</u> at 46-48. The ALJ found plaintiff's subjective complaints not credible, which he was entitled to do, as discussed below. <u>Id.</u> at 48. He noted that while plaintiff complained of pain at a number of appointments and examinations, the objective findings from those examinations were inconsistent with plaintiff's complaints. <u>Id.</u> at 46-47. The ALJ noted that the plaintiff reported "good benefit from his epidurals" and was able to "ambulate and function better" after epidural injections. <u>Id.</u> at 47. This observation is supported by the reports of Drs. Viera and Manikantan, both of whom reported that plaintiff was experiencing significant, prolonged pain relief as a result of the epidural injections. <u>Id.</u> at 331, 457. Dr. Manikantan discharged plaintiff from Baystate Medical Center in "good condition." <u>Id.</u> at 457.

The ALJ also relied upon the assessments completed by Drs. Caraceni and Karande, both of whom reached the conclusion that plaintiff was less limited in his activity than the ALJ eventually assessed him to be. <u>Id.</u> at 48, 224-229, 241-248.

Further, the ALJ noted that plaintiff admitted he could do some work if sedentary. <u>Id.</u> at 47. The ALJ noted that plaintiff could perform household chores at his own pace, could handle personal finances, could use the computer, and could bike and kayak. <u>Id.</u> at 46.

Accordingly, for all these reasons, the ALJ found that the longitudinal history of plaintiff "simply does not bear out a debilitating degree of functional limitation, such that would eliminate all work on a continuous basis." <u>Id.</u> at 48. This evidence, upon which the ALJ relied, amounts to "more than a mere scintilla." <u>Richardson</u>, 402 U.S. at 401 (quoting <u>Consol. Edison Co.</u>, 305 U.S. at 229). Therefore, his conclusion regarding plaintiff's residual functional capacity was not in error.

C.    <u>Plaintiff's Credibility</u>

The ALJ found the plaintiff's subjective complaints of pain not credible for a number of reasons. In making this determination, the ALJ considered plaintiff's attempts to manipulate treatment visits to suit his application, plaintiff's admission to having lied in order to get methadone treatment, and plaintiff's jail time for dealing drugs. <u>See</u> AR at 46-48.

The ALJ found that plaintiff's subjective allegations were "inconsistent with his treatment history." Id. at 46-48. Although office notes from Family Practice Associates reflect complaints of moderate pain when plaintiff was seen on June 22, 2007, the ALJ noted that the evidence indicated that plaintiff appeared objectively well and in no distress. Id. at 46. Plaintiff's range of motion, gait and station were normal and his only prescribed medication at that time was Naprosyn. Id. In addition, the ALJ found that on August 20, 2007, plaintiff appeared for an examination "for the primary purpose of getting his disability forms filled out," which further impugned his credibility. Id. at 46, n.2. The ALJ noted that, at that time, plaintiff manifested no objective findings and was neurologically intact, and while his gait was somewhat stiff, "he had no problems getting on and off the examining table." Id. at 46.

When seen on February 20, 2008, plaintiff's wife was "very vocal" about his treating sources not taking his back pain seriously, but apparently only as it related to his Social Security Disability application. Id. The ALJ noted that this further undermined plaintiff's credibility. Id. at 47, n.3. When seen on May 6, 2009, plaintiff acknowledged an ability to participate in activities of daily living independently. Id. Additionally, on May 14, 2009, plaintiff reported kayaking for exercise. Id. On March 1, 2010, plaintiff acknowledged that he could do some form of work if

sedentary. Id. at 47.

Accordingly, despite plaintiff's subjective complaints, the ALJ found that his allegations of pain and limitations were "considered credible only to the extent that he is limited to the aforementioned modest exertional/non-exertional requirements." Id. at 48.

An ALJ "is not required to take the claimant's assertions of pain at face value," Bianchi v. Sec'y of Health & Human Servs., 764 F.2d 44, 45 (1st Cir. 1985), and is entitled to disbelieve subjective complaints of disabling pain in the face of contrary medical evidence. See Evangelista, 826 F.2d at 141; Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 21 (1st Cir. 1986). "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

In this case, the ALJ summarized the medical evidence that was inconsistent with plaintiff's testimony, listed specific factors damaging plaintiff's credibility, such as his lying and drug use, and noted that plaintiff continued to perform daily activities, including kayaking and riding his bike. See AR at 48. These specific findings support the ALJ's determination that plaintiff was not credible. Accordingly, it was not error for the ALJ to

22

disbelieve portions of the plaintiff's subjective complaints.

IV.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

2. Defendant's Motion for Order Affirming the Decision of the Commissioner (Docket No. 14) is ALLOWED.


                              /s/ Mark L. Wolf
                            UNITED STATES DISTRICT JUDGE